GERALD WEST

USDC NUMBER: _____

VS

KEITH BICKHAM, WARDEN
RAYBURN CORRECTIONAL CENTER

## MEMORANDUM IN SUPPORT OF
## PETITION FOR WRIT OF HABEAS CORPUS

INTO THE HONORABLE COURT comes, Gerald West, (Petitioner hereinafter) who respectfully presents the following in support of his 28 USC 2254 Habeas Corpus and provides as follows to-wit:

### INITIAL ARGUMENT

**The District Court's Summary Dismissal Pursuant to Louisiana Code of Criminal Procedure Article 929 Failed to Afford Mr. West an Adequate Opportunity to Present the Ineffective Assistance of Trial Counsel Claims Fairly on Post-Conviction Relief**

Mr. West was represented by Appellate Counsel Meghan Harwell Bitoun, of the Louisiana Appellate Project on his first appeal as of right. Ms. Bitoun raised five assignments of error which are itemized in the Petition. Ms. Bitoun did not raise an ineffective assistance of trial counsel claim.

During his first appeal as of right, Mr. West had a right to free transcripts. **Griffin v. Illinois,** 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (due process and equal protection clauses of the Fourteenth Amendment guarantee an indigent criminal appellant access to the entire record of his trial, including the court reporter's transcripts of the live proceedings, at no cost, since there would be no opportunity to bring an effective appeal without these materials or some form of equivalent), and court appointed counsel on first appeal as of right. **Douglas v. California,** 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (relying on **Griffin** to hold that states must appoint counsel to represent indigent defendants in appeals as of right under state law).

1

However, the free transcripts are not automatically provided to Mr. West. To assert the right, Mr. West was required to file a motion with the court of appeal requesting to loan the trial transcripts and district court record to file a pro se supplemental brief to raise additional assignments of error. Also, there is no requirement or practice for the appellate attorney to provide the trial transcripts to the appellant.

Unfortunately – as with many incarcerated prisoners in Mr. West position – he did not have the capacity or the assistance of inmate counsel at the time to file a motion for a supplemental pro se brief to raise additional assignments of error. Thus, West never acquired the trial transcript and district court record during direct appeal when he was constitutionally entitled to it.

Outside of the direct appeal process, a defendant is not thereafter entitled to a free copy of his state trial transcript and record to search for possible error upon which to base a petition for collateral relief in the future merely because he is indigent. **United State v. MacCollom,** 426 U.S. 317, 323-24, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976) (no constitutional right to transcripts on collateral review of a conviction). Likewise, an indigent defendant in a post-conviction proceeding enjoys no constitutional right to appointed counsel. *See* **Coleman v. Thompson,** 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); **Pennsylvania v. Finley,** 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).

Additionally, in Louisiana, claims of ineffective assistance of trial counsel claims are not normally addressed on direct appeal, but relegated to post conviction relief applications filed in the district court, where a full evidentiary hearing can be conducted, if necessary. **State v. Burkhalter,** 428 So.2d 449, 456 (La. 1983).

Thus, during the indigent defendant's first appeal as of right, where the right to a free trial transcript and appointment of counsel is constitutionally guaranteed, Louisiana state law relegates ineffective assistance of trial counsel claims to the post-conviction relief process where the constitutional right to free transcripts and the appointment of counsel is not constitutionally guaranteed.

Louisiana does, however, provide limited statutory rights to the appointment of counsel in specific circumstances in post-conviction proceedings. *La. C.Cr.P. art. 930.7.*[1]

"A direct appeal is limited to the record, see *La. C.Cr.P. art. 920*, and therefore, is not designed to address ineffective assistance of trial counsel claims. Claims presented on direct appeal are limited to issues which were submitted to the trial court. **State v. Harris,** 18-1012, p. 17 (La. 7/9/20), 340 So.3d 845, 857. "Louisiana's procedural system 'makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal....' ". **Harris,** 340 So.3d at p. 17, quoting **Coleman v. Goodwin,** 833 F.3d 537, 542 (5th Cir. 2016). Ineffective assistance of counsel claims is generally raised in applications for post conviction relief. See e.g., **State v. Truitt,** 500 So.2d 355, 359 (La. 1987). **State v. Barnes,** 365 So.2d 1282, 1285 (La. 1978).

On post-conviction relief, West was required to demonstrate a "particularized need". **Ford v. Vannoy,** 2025 WL 2733255, 25-402 (La. App. 5 Cir. 9/25/25)[2] ("Particularized needs" requires that the applicant allege the "events or occurrences," or some actions taken or omitted, which support or establish the existence of the ground(s) in *La. C.Cr.P. art. 930.3*, and would be relevant to the court in determining the appropriate disposition of the application under *La. C.Cr.P. arts.* [927] or 929, or to show genuine questions of relevant facts sufficient to conduct an evidentiary hearing pursuant to *La. C.Cr.P. art. 930.*).

---

[1]     *La. C.Cr.P. art. 930.7* provides:

    A. If a petitioner in indigent and alleges a claim which, if established, would entitle him to relief, the court may appoint counsel.

    B. The court may appoint counsel for an indigent petitioner when it orders an evidentiary hearing, authorizes the taking of depositions, or authorizes request for admissions of fact of genuineness of documents, when such evidence is necessary for the disposition of procedural objections raised by the respondent.

    C. The court shall appoint counsel for an indigent petitioner when it orders an evidentiary hearing on the merits of a claim, or authorizes the taking of depositions or requests for admissions of fact or genuineness of documents for use as evidence in ruling upon the merits of the claim.

[2]     On appeal, Ford filed a pro se brief in which he raised four assignments of error. *See* **Ford,** at 676-82.

A particularized need has also been defined as a showing that the "suit for which the transcript is desired is not frivolous and that the transcript is needed to decide the issue presented." **United State v. MacCollom,** 426 U.S. 317, 325, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976) (noting that an indigent inmate has a constitutional right under the Equal Protection Clause to free copies of documents when a defendant can show that denial of his request will deprive him of an "adequate opportunity to present claims fairly"); **State ex rel. Bernard v. Criminal District Court Section J.,** 94-2247, p. 1 (La. 4/28/95), 653 So.2d 1174, 1175 (per curiam).

This showing is necessitated because an inmate is not entitled to those documents "as of right" and thus must demonstrate need to access those documents prior to their cost-free production. **State ex rel. Simmons v. State,** 93-0275, pp. 1-2 (La. 12/16/94), 647 So.2d 1094, 1095 (per curiam).

On May 20, 2025, West properly filed his First Uniform Application for Post-Conviction Relief ("APCR"), pursuant to **Bernard,** showing a particularized need, which set out six (6) specific constitutional errors requiring the requested documentation for support. West notes that three (3) of the constitutional errors are ineffective assistance of trial counsel claims.

Pursuant to *La. C.Cr.P. art. 929,* the district court summarily denied the claims without providing West with the requested trial transcripts or an evidentiary hearing.

The post-conviction relief proceeding was the first designated proceeding for West to raise a claim of ineffective assistance at trial. Thus, the proceeding is in many ways the equivalent of his direct appeal as to the ineffective assistance of trial counsel claims. This is because the state habeas court "looks to the merits of the clai[m]" of ineffective assistance, no other court has addressed the claim, and "defendants pursuing first-tier review ... are generally ill equipped to represent themselves" because they do not have a brief from counsel or an opinion of the court addressing their claim of error. *See* **Halbert v. Michigan,** 545 U.S. 605, 617, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005); *see also* **Douglas,** 372 U.S., at 357-358, 83 S.Ct. 814.

4

By deliberately choosing to move trial-ineffectiveness claims outside of the direct appeal process, where the free trial transcript and the appointment of counsel is constitutionally guaranteed, the State of Louisiana significantly diminished West's ability to file such claims.

In the context of ineffective-assistance-of-trial-counsel claims, the procedures enunciated in Louisiana Code of Criminal Procedure Article 929 essentially contravenes the constitutional protections afforded in **Douglas, Griffin,** and **MacCollom** supra, because the summary disposition allows the district court to deny the first-tier review of the ineffective assistance of trial counsel claim without the constitutionally guaranteed right to the trial transcripts and the appointment of counsel.

*La. C.Cr.P. art. 929,* states in pertinent part:

A. If the court determines that the factual and legal issues can be resolved based upon the application and answer, **and supporting documents, including relevant transcripts, dispositions,** and other reliable **documents submitted by either party** or available to the court, the court may grant or deny relief without further proceedings. (Emphasis added).

As stated supra, Mr. West filed his APCR raising three (3) IAC claims pursuant to **Bernard** – requesting the district court record to support the claims. West did not have any "supporting documents" or "relevant transcripts" to adequately present the IAC claims fairly.

Thus, the district court's summary denial of the IAC claims was based solely upon the state's answer and "other reliable documents" that were available to the district court. Mr. West did not receive an evidentiary hearing or the appointment of counsel.

Considering IAC claims are not normally addressed on appeal, but relegated to post conviction relief applications, West posits that this practice precluded him from raising the IAC claims in particular on direct appeal when he had an absolute right to the trial transcripts. As a federal petitioner, West must demonstrate that his claims are not frivolous and that the transcripts are needed to prove his claims before he is entitled to a free copy of pertinent transcripts. **Deem v. Devasto,** 140 F. App'x 574, 575 (5th Cir.

5

2005); **Cook v. Cain**, Civ. Action No. 15-1882, 2015 WL 6702290, at *2 (E.D. La. Nov. 3, 2015). West has constitutionally satisfied the "particularized need" requirement and he is not conducting a "fishing expedition".

With regard to the three IAC claims raised, this Court should remand this matter to the district court and order the court to fulfill West's document request and allow for supplementation of the application for post-conviction relief after receipt of those documents. Then, If the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents, including relevant transcripts, dispositions, and other reliable documents submitted by either party or available to the court, the court may grant or deny relief without further proceedings. *La. C.Cr.P. art. 929.*

## GROUND ONE

**The State of Louisiana prejudicially offered and the court admitted Leander Lafrance's recorded police interview pursuant to *La. C.E. Art. 804(A)(3)*, which deems a declarant "unavailable as a witness" when he cannot or will not testify in court concerning the substance of his out-of-court statement when he "testifies to a lack of memory of the subject matter of his statement."**

The State did not satisfy the requirement of *La. C.E. art. 804(A)(3)* when it offered and the court admitted Lafrance's recorded police interview. Lafrance's testimony shows he had a clear selective memory of the subject matter of his statements to Det. Poluikis. The State introduced Lafrance's recorded police interview and played it in open court.[3]

West submitted this claim without the transcript or record. As such, in **West**, supra, the court of appeal opinion stated, "[a] review of the exhibit revealed the following synopsis of Lafrance's police interview":

---

[3] Lafrance testified that he recognized himself and his voice in the recorded video footage of his police interview, but denied any recollection of the contents of his statements. The state offered, and the court admitted without objection, Lafrance's recorded interview pursuant to *La. C.E. 804(A)(3)*, which deems a declarant "unavailable as a witness" when he cannot or will not testify in court concerning the substance of his out-of-court statement when he "testifies to a lack of memory of the subject matter of his statement."

6

Asked if he knew anything about the shooting that had occurred recently on Bundy Road, Lafrance admitted that his friend, who used to date his sister, had recently been shot in that area.[4]

Lafrance explained that the victim was involved in the gun trade, and admitted that he had purchased a small firearm from the victim on a previous occasion. Lafrance had asked the victim to notify him if he ever had a rifle for sale, which he repeatedly referred to during the interview as a "stick." Eventually the victim contacted Lafrance and offered to trade him a rifle for another firearm.

Lafrance told Det. Poluikis that he offered to buy the rifle for $400 cash, which the victim apparently declined. Lafrance then asked his friend "Frog" if he had any guns to trade for the rifle, and Frog replied that he did. Lafrance confirmed with the victim that Frog would be trading the firearm, and they arranged the meeting. Lafrance told Det. Poluikis that when the victim arrived to conduct the transaction, Lafrance and Frog both entered the back seat of the victim's vehicle. The victim and Frog greeted each other, then Frog pulled out one of the firearms he had brought to trade and shot the victim. Lafrance asked Frog, "What the f-ck?" and as he turned to exit the vehicle, he heard Frog fire more gun shots.

In response to more detailed questioning by Det. Poluikis, Lafrance explained that when he entered the victim's vehicle, he sat in the back seat behind the victim, Frog sat next to him in the rear, passenger seat, and the victim placed the rifle in the backseat. He stated that Frog had brought with him (ostensibly to trade for the rifle) a "four five" and a nine millimeter "or something." Defendant was holding one of the guns in his lap and the other in his hand after he entered the vehicle. Lafrance told Det. Poluikis that Frog must have fired both guns since he heard, "two, three, or four" more gun shots, and since Det. Poluikis revealed that police had located two different caliber casings at the crime scene. Lafrance stated that when they fled, he ran to the left and drove away in his Trailblazer, and Frog grabbed the rifle and ran in the opposite direction on foot. Lafrance told Det. Poluikis that he did not know Frog's real name, but described him as eighteen, nineteen, or twenty, and provided his Instagram username. Lafrance stated that he was getting nothing from the transaction, and that the victim and Frog knew each other.[5]

**State v. West,** 371 So.3d 1, at *16

After the State played Lafrance's recorded police interview for the jury, it tendered Mr. Lafrance.

West posits that Lafrance falsely denied any recollection of the contents of his statements in the recorded police interview. Lafrance testified that some of the statements he made in his recorded interview with Det. Poluikis were not true. He admitted that he made a second statement to the District Attorney, in the presence

---

[4] Det. Poluikis told Lafrance that only one shooting had occurred on Feb. 3, 2018 on Bundy Road, and it was quickly established that the victim was Lafrance's friend.

[5] Because Lafrance ultimately admitted that he was not needed to broker the transaction between the victim and Frog, Det. Poluikis asked Lafrance why he was there. Lafrance responded that he and the victim, who he referred to as "little brother," were going to leave together after the transaction.

of his attorney, on November 16, 2021, in which he stated that he picked up his girlfriend, Frog, and another person named Ruger in his Trailblazer and drove to the Lakewind East Apartments to meet the victim. The rest of his story remained the same, except that he indicated that he was the one who grabbed the rifle when he fled the victim's vehicle after the shooting.

Lafrance admitted on cross-examination that he had learned during discovery conducted for his own trial that an eyewitness had described him as the perpetrator who had exited the vehicle holding the rifle, and that the witness reported that both perpetrators fled in the same direction. Consequently, he decided to change his story to align with what the witness had reportedly observed. Lafrance testified that he lied to Det. Poluikis about Ruger's and his girlfriend's presence at the scene because he did not want to get them involved. On re-direct examination, Lafrance admitted that Frog fled the crime scene with him (and his girlfriend and Ruger) in his Trailblazer. He also stated that he was frightened to testify against Defendant because he was concerned for his family's safety.

Prior to introducing and playing the interview in open court, the State should have first examined Lafrance using a transcribed reproduction of the substance of Lafrance's statements made in the recorded police interview to determine his "lack of memory" of the statements he made to Det. Poluikis. If, during the examination Lafrance would have asserted "a lack of memory", the State's use of *Article 804(A)(3)* would have been constitutionally permissible.

However, at the outset the State offered, and the court admitted without objection, Lafrance's recorded interview pursuant to *La. C.E. art. 804(A)(3)* and played the interview in open court and then permitted Lafrance to testify that he recognized himself and his voice in the recorded video footage of his police interview and yet assumed Lafrance's denial of any recollection of the contents of his statements.

The State's use of *La C.E. art. 804(A)(3)* to introduce Lafrance's statements to Det. Poluikis was in violation of *Subsection (A)(3)* because Lafrance clearly did not have "a lack of memory of the subject matter of his statements". Moreover, Lafrance testified that he was frightened to testify against Defendant

8

because he was concerned for his family's safety. Even so, the introduction of the video footage did not mitigate the fear and concern for the safety for his family, nor does it meet the requirement of *Subsection (A)(3)*.

The State prejudicially used *Article 804(A)(3)* to circumvent Mr. West's constitutional right to confront and cross-examine Lafrance while using a transcribed reproduction of the substance of Lafrance's statements made in the recorded police interview. *La. Const. Art. I. § 16.*

The confrontation and cross-examination would have produced damaging impeachment evidence because the record shows Lafrance told multiple lies to Det. Poluikis and changed his story after learning that an eyewitness had described him as the perpetrator who had exited the vehicle holding the rifle.

In its Judgment, the district court states that the defense had an opportunity to cross-examine and confront Lafrance. The district court's assertion is incorrect because Lafrance's statements were introduced through the recorded police interview and he selectively testified to a lack of memory to statements made in the interview. Thus, the recorded police interview was used to introduce the statements made by Lafrance, while shielding selective statements from cross-examination due to his "lack of memory".

The Louisiana Supreme Court held West failed to show a particularized need for the requested documents, citing **Bernard**[6]. As to West's remaining claims, the Supreme Court held that he failed to satisfy his post-conviction burden of proof. *La. C.Cr.P. art. 930.2.* **State v. West,** --- So.3d ----, 2026 WL 1830647 (Mem), 2026-00050 (La. 6/25/26).

The Supreme Court's opinion is in conflict with the constitutional right to free copies in instances in which he shows that the denial of the request will deprive him of an "adequate opportunity to present [his] claims fairly." **MacCollom,** quoting **Ross.**

---

[6] 653 So.2d 1174.

9

With regard to this claim, West meets the requirement of specific allegations of factual bases stated with reasonable particularity in the APCR, and he has reasonably met the "particularized need" requirement for Leander Lafrance's recorded police interview and subsequent statements made by Lafrance to the State and police.

Mr. West has proven the State prejudicially used *Article 804(A)(3)* in this case. West is requesting this Court to find reversible error and reverse the convictions and sentences and remand to the district court for a new trial, or alternatively, remand and order the district court to provide West with free copies of the trial transcript and Lafrance's recorded police interview and subsequent statements made to the State and police, and to allow West to supplement the claim after receipt of those documents.

## GROUND TWO

**Trial counsel rendered ineffective assistance of counsel when he failed to object when the State offered and the trial court admitted Lafrance's recorded interview pursuant to *La. C.E. art. 804 (A)(3)*. Trial counsel rendered prejudice because Lafrance t did not have "a lack of memory of the subject matter of his statements".**

A claim of ineffective assistance of counsel ("IAC") is more properly raised in an application for post-conviction relief in the district court. This is because post-conviction relief provides the opportunity for a full evidentiary hearing under *La. Code Crim. P. art. 930.*

A defendant is entitled to IAC under the Sixth Amendment of the United States Constitution and Article 1, § 13, of the Louisiana Constitution. **State v. LaCaze,** 99-0584 (La. 1/25/02), 824 So. 2d 1063, 1078, cert denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed. 2d 110 (2002). A claim of IAC is analyzed under the two-pronged test developed by the United States Supreme Court in **Strickland v. Washington,** 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. **State v. England,** 18-623 (La. App. 5 Cir. 4/3/19), 268 So.3d 1178. A defendant asserting

10.

an IAC claim must show: (1) that defense counsel's performance was deficient; and (2) that the deficiency prejudiced the defendant. The defendant has the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.

Trial counsel should have objected to the State's prejudicial use of *Article 804(A)(3)* to circumvent Mr. West's constitutional right to confront and cross-examine Lafrance with the substance of Lafrance's statements made in the recorded police interview. *La. Const. Art. I. § 16.*

Trial counsel's cross-examination of Lafrance would have produced damaging impeachment evidence because the record shows Lafrance told multiple lies to Det. Poluikis and changed his story after learning that an eyewitness had described him as the perpetrator who had exited the vehicle holding the rifle.

Trial counsel was ineffective and rendered prejudice because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

In its Judgment, the district court states that West's "conclusory allegation is insufficient to support his claim" and that "[t]he record shows that trial counsel cross-examined the eyewitness thoroughly."

To reiterate, Lafrance's statements were introduced through the recorded police interview and he selectively testified to a lack of memory to statements made in the interview. Thus, the recorded police interview was used to introduce the statements made by Lafrance, while shielding selective statements from cross-examination due to his "lack of memory".

The Louisiana Supreme Court held West failed to show he received ineffective assistance of counsel under the standard of **Strickland v. Washington,** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and he failed to show a particularized need for the requested documents under the standard of

11

Bernard[7]. As to West's remaining claims, the Supreme Court held that he failed to satisfy his post-conviction burden of proof. *La. C.Cr.P. art. 930.2.* **State v. West,** --- So.3d ----, 2026 WL 1830647 (Mem), 2026-00050 (La. 6/25/26).

The Supreme Court's opinion illustrates how the State of Louisiana's practice of relegating IAC claims from direct appeal to post-conviction relief contravenes his absolute right to free transcripts on appeal under **Griffin.** Further, the district court summarily denied the IAC claims without an evidentiary hearing. Respectfully, how can Mr. West constitutionally be expected to show he received IAC – and satisfy his post-conviction relief burden of proof – without the requested district court record and documents with regard to Lafrance's recorded police interview and subsequent statements made by Lafrance to the State and police?

Mr. West has proven the State prejudicially used *Article 804(A)(3)* in this case and that trial counsel rendered ineffective assistance and prejudice when he failed to object to the introduction of the recorded police interview pursuant to the lack of memory theory. West is requesting this Court to find reversible error, *e.g.*, deficiency and prejudice and reverse the convictions and sentences and remand to the district court for a new trial, or alternatively, remand and order the district court to provide West with free copies of the trial transcript and Lafrance's recorded police interview and subsequent statements made to the State and police, and to allow West to supplement the claim after receipt of those documents.

## GROUND THREE

**Representatives of the State of Louisiana used *La. C.E. art. 804(A)(3)* to introduce out-of-court statements in Lafrance's recorded police interview that were known to be false and failed to correct it.**

---

[7] 653 So.2d 1174.

If a prosecutor allows a State witness to give false testimony without correction, a reviewing court must reverse the conviction gained as a result of that perjured testimony, even though the testimony goes only to the credibility of the witness. **Napue v. People of the State of Illinois,** 360 U.S. 264, 269, 79 S.Ct. 1171, 1177, 3 L.Ed.2d 1217 (1959); **State v Williams,** 338 So.2d 672, 677 (La. 1976). Even if the State does not solicit the false testimony, its failure to correct it, "when it appears" violates due process guarantees. **Napue,** 360 U.S. at 269, 79 S.Ct. at 1177; **State v. Ellender,** 354 So.2d 500, 503 (La. 1978).

When such false testimony goes before the jury, the defendant must receive a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. **Giglio v. United States,** 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); **State ex rel. Shilling v. Whitley,** 92-3312 (La. 4/29/94), 637 So.2d 459.

To establish a Napue violation, West must prove: "(1) [the witness] testified falsely; (2) the government knew the testimony was false; and (3) the testimony was material." **Giglio,** 405 U.S. at 153-54, 92 S.Ct. 763. "Even assuming that the prosecution presented (or failed to correct) false testimony, the critical factor is materiality." See **United States v. Stanford,** 823 F.3d 814, 838 (5th Cir. 2016) (citing **United States v. Wall,** 389 F.3d 457, 465 (5th Cir. 2004).

In his APCR, West advised the district court that he was raising the above claim without supporting documents. However, there is a statement by Det. Poluikis in the court of appeal's opinion that asserts Lafrance "had a problem" with Frog and had apparently intended to double-cross him at some point in conjunction with the firearm exchange. <u>See</u> **West,** 327 So.3d at *15.

Lafrance also provided subsequent statements to the District Attorney. Lafrance testified that some of the recorded statements he made in his recorded interview with Det. Poluikis were not true. He also admitted that he made a second statement to the District Attorney, in the presence of his attorney, on November 16, 2021.

13

In its Judgment, the district court asserts that West's allegations are conclusory and that he fails to prove that 1) witness testified falsely 2) that the State knew it to be false and failed to correct it and 3) that the statements were material.

The above claim is not "conclusory". In the court of appeal's opinion, Det. Poluikis specifically asserts that Lafrance stated he "had a problem" with Frog and had apparently intended to double-cross him at some point in conjunction with the firearm exchange. See **West**, 327 So.3d at *15.

Again, how can West constitutionally be expected to prove Lafrance testified falsely to material statements that the State knew to be false and failed to correct without Lafrance's recorded police interview and subsequent statements to the State and police?

Mr. West has made a prima facie showing that the State prejudicially used *Article 804(A)(3)* in this case to introduce statements known to be false and failed to correct it. West is requesting this Court to find reversible error and reverse the convictions and sentences and remand to the district court for a new trial, or alternatively, remand and order the district court to provide West with free copies of the trial transcript and Lafrance's recorded police interview and subsequent statements made to the State and police, and to allow West to supplement the claim after receipt of those documents.

## GROUND FOUR

**During trial Leander Lafrance admitted that he was initially charged with second degree murder with Gerald West, but in exchange for his trial testimony, he agreed to plead guilty to obstruction of justice and accessory after the fact. He received a twenty-year sentence of imprisonment at hard labor on the obstruction charge and a five-year sentence on the accessory charge, but nevertheless agreed that his expected, actual release date was September of 2025.[8]**

---

[8] **State v. West**, supra.

On cross-examination, Lafrance admitted that he was initially charged with second degree murder with Defendant, but in exchange for his trial testimony, he agreed to plead guilty to obstruction of justice and accessory after the fact. He received a twenty-year sentence of imprisonment at hard labor on the obstruction charge and a five-year sentence on the accessory charge,[9] but nevertheless agreed that his expected, actual release date was in September of 2025. West notes that Lafrance was subsequently released. The State of Louisiana invoked *Louisiana Code of Criminal Procedure Article 890.1* to deviate from Lafrance's minimum mandatory sentence.

*La. C.Cr.P. art. 890.1* provides for the waiver of minimum mandatory sentences as follows:

A. Notwithstanding any other provision of the law to the contrary, if a felony or misdemeanor offense specifies a sentence with a minimum term of confinement or a minimum fine, or that the sentence shall be served without benefit of parole, probation, or suspension of sentence, the court, upon conviction, in sentencing the defendant shall impose the sentence as provided in the penalty provisions for that offense, unless one of the following occurs:

(1) The defendant pled guilty pursuant to a negotiated plea agreement with the prosecution and the court, which specifies that the sentence shall be served with benefit of parole, probation, or suspension of sentence or specifies a reduced fine or term of confinement.

(2) In cases resulting in a trial, the prosecution, the defendant, and the court entered into a post-conviction plea agreement, which specifies that the sentence shall be served with benefit of parole, probation, or suspension of sentence or specifies a reduced fine or term of confinement.

B. If such agreements are entered into between the prosecution and the defendant, the court, at sentencing, shall not impose a lesser term of imprisonment, lesser fine, or lesser period of sentence served without benefit of parole, probation, or suspension of sentence than that expressly provided for under the terms of the plea or post-conviction agreement.

C. No plea or post-conviction agreement shall provide parole eligibility at a time earlier than that provided in R.S. 15:574.4.

..........

E. At the time the sentence is imposed pursuant to this Article, the Uniform Commitment Sentencing Order shall specify that the sentence is imposed pursuant to the provisions of this Article.

---

[9] **State v. West**, at FN 25.

Pursuant to *La. C.Cr.P. art. 890.1*, Lafrance entered into negotiated plea agreement with the prosecution and the court based on his full cooperation with the State and his testimony at West's trial to receive a reduction in his charge(s) and sentence. The procurement of Lafrance's testimony was essential to the State's case against West. Therefore, he has a right to a copy of the terms of Lafrance's negotiated plea agreement with the prosecution and the court and a copy of the Uniform Commitment Sentencing Order shall specify that the sentence is imposed pursuant to the provisions of this Article.

The district court alleges that West fails to assert a claim that entitles him to relief for post-conviction, and that this claim is more appropriate for a Production of Documents.

Mr. West has a right to review a copy of the negotiated plea agreement showing that Leander Lafrance plead guilty to reduced charge(s) and entered into a negotiated plea agreement with the prosecution and the court, pursuant to *La. C.Cr.P. art. 890.1* and received a reduced penalty for his full cooperation and testimony against Mr. West.

Mr. West is seeking this Court to remand and order the district court to provide West with the requested copy of any negotiated plea agreement between Lafrance and the State that may exist, and allow for supplementation of this claim after receipt of those records.

**GROUND FIVE**

**Ineffective assistance of defense counsel for failing to object to the State presenting other crimes evidence in violation of *La. C.E. 404(B)*. Defense counsel allowed the State to elicit testimony from Det. Torres that Defendant committed a shooting on April 30, 2018 and that forty-five caliber casings were discovered at the crime scene. Det. Torres also testified that the victim of the subsequent shooting positively identified Defendant as the perpetrator in a confirmation photograph and stated that his nickname was "Frog." Defense counsel's deficient performance was exacerbated by his agreement with the State to limit the testimony it elicited from Det. Poluikis and Det. Torres regarding the facts of the April 30, 2018 shooting.**

A claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the district court. This is because post-conviction relief provides the opportunity for a full evidentiary hearing under *La. Code Crim. P. art. 930*.

A defendant is entitled to effective assistance of counsel under the Sixth Amendment of the United States Constitution and Article 1, § 13, of the Louisiana Constitution. **State v. LaCaze,** supra. A claim of ineffective assistance of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in **Strickland v. Washington,** supra. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him.

A defendant asserting an ineffective assistance of counsel claim must show: (1) that defense counsel's performance was deficient; and (2) that the deficiency prejudiced the defendant.

The defendant has the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.

West reiterates that he does not have the trial transcript or record in this case and the instant claim (and all presented claims) derived *pro se* from the court of appeal opinion in **West,**[10] supra, without supporting evidence to develop the claim. See **Haines v. Kerner,** 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

In West, supra, the court of appeal opinion held:

---

[10] On appeal at Assignment of Error Number 1, West asserted that the trial court erred in allowing the state to present other crimes evidence in violation of *La. C.E. 404(B)*. Specifically, West complained that the State elicited testimony from Det. Torres that West committed a shooting on April 30, 2018 and that forty-five caliber casings were discovered at the crime scene.

17

At a pre-trial hearing on the matter, the State explained that "the detective was given the nickname of 'Frog' very early in the investigation ... he found out who 'Fro' was because of the April 30, 2018 case." The State continued, "it would be difficult to explain how the detective developed [West] as a suspect simply from the nickname of 'Frog,' without talking about how is 'Frog' – how'd you find out who 'Frog' was." The trial court stated that it would allow the State to present the evidence of the April 30, 2018 shooting, finding that it "goes to [West's] identity," and stating "it sounds like that is how they developed [West] as a suspect in this particular case."

**State v. West,** 371 So.3d 1, at **22.

In this assignment of error, West asserted "that because the forty-five caliber casings discovered at the crime scene at the April 30, 2018 incident were not fired from the same firearm as the forty-five caliber casings discovered at the crime scene in the instant case, evidence that [he] was involved in another shooting was irrelevant and could have only served to prejudice the jury. [West] further argue[d] that the State did not need to present evidence of the April 30, 2018 shooting to prove [West's] identity as 'Frog,' arguing that the State had proved [his] identity through his cell phone records and through Lafrance's testimony."

There was clearly no need in this case for the State to introduce other crimes evidence that Defendant was identified by the victim as the perpetrator who committed a shooting and that forty-five caliber casings were discovered at the crime scene. The State did not need to present evidence of the April 30, 2018 shooting to prove Defendant's identity as "Frog", and the more likely reason for the introduction of the evidence that forty-five caliber casings were discovered at the scene of the shooting was to show the jury that because Defendant was identified as using a forty-five caliber firearm in another shooting, he likely used the forty-five caliber in the instant case.

West notes that in the court of appeal's opinion it acknowledged that during the State's re-direct examination of Lafrance at the pre-trial hearing, "the state asked who, in addition to [West] (by name), was in his vehicle when he fled the crime scene after the shooting". The court of appeal held that "[t]his appears to be the only time that Lafrance acknowledged that [West] was, in fact, Frog."

18

In its Judgment, the district court states that West "raised a similar claim on appeal involving the admittance of the same *404B* evidence that he argues here."

The instant claim is not predicated upon the same issue presented on appeal. The issue has never been litigated or disposed of, and the claim is not predicated upon issues which were previously resolved.

Here, West alleges that defense counsel rendered deficient performance and prejudice when he failed to object to the testimony regarding the April 30, 2018 shooting under the premise of establishing West's identity. The deficient performance by counsel in this case was egregious because he agreed to the introduction of the testimony under a faulty premise presented by the state.

In his APCR, West advised the district court that he was raising the above claim without supporting documents. Mr. West has made a prima facie showing that his defense counsel was ineffective and rendered prejudice when he failed to object to the State's introduction of other crimes evidence in this case. West is requesting this Court to find reversible error and reverse the convictions and sentences and remand to the district court for a new trial, or alternatively, to remand for an evidentiary hearing and the appointment of counsel. *La. C.Cr.P. arts. 930* and *930.7*.

The Louisiana Supreme Court held West failed to show he received ineffective assistance of counsel under the standard of **Strickland**, and he failed to show a particularized need for the requested documents under the standard of **Bernard**[11].

Again, this position contravenes West's absolute right to free transcripts on appeal under **Griffin**. As stated supra, claims of ineffective assistance of trial counsel claims are not normally addressed on appeal, but relegated to post conviction relief applications filed in the district court, where a full evidentiary hearing can be conducted, if necessary. The district court summary denied the IAC claim without an

---

[11] 653 So.2d 1174.

19

evidentiary hearing. Respectfully, how can Mr. West constitutionally show he received IAC – and satisfy his post-conviction relief burden of proof – without the requested district court record and documents with regard to Lafrance's recorded police interview and subsequent statements made by Lafrance to the State and police?

**GROUND SIX HAS BEEN ABANDONED**

**CONCLUSION**

The Federal Question before this Honorable Court is whether Gerald West's conviction and sentence should stand in clear violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, where the State of Louisiana deliberately chooses to move trial-ineffectiveness claims outside of the direct appeal process, where the trial transcripts and counsel is constitutionally guaranteed, and moves it to the post-conviction relief process, where counsel and the trial transcripts are not constitutionally guaranteed. And it is upon this Federal Court to reverse the conviction and sentence and grant the Petitioner the right to Due Process of Law, or alternatively, remand and order the district court to provide West with free copies of the trial transcripts and Lafrance's recorded police interview and subsequent statements made to the State and police, and to allow West to supplement the claim after receipt of those documents. The **Griffin** and **Douglas** issue renders a clear violation of Petitioner's Constitutional Rights and it is where this Habeas Lies herein for justice to be served.

20

## PRAYER

Wherefore Petitioner PRAYS this 2254 Habeas Corpus be granted and this case remanded before the trial court for a new trial or remand and order the district court to provide West with free copies of the trial transcripts and Lafrance's recorded police interview and subsequent statements made to the State and police, and to allow West to supplement the claim after receipt of those documents.

Respectfully Submitted:

Gerald West #768228
Rayburn Correctional Center
27268 HWY 21 N
Angie, Louisiana 70426

21